# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CHRIS ANZALONE, and SARAH BREUER,
individuals,

             Case No.:

  Plaintiffs,

v.

BERMUDA ESTATES, LLC,
a Florida limited liability company,
PROFESSIONAL DEBT MEDIATION, INC.,
a Florida for-profit corporation, and,
MIDLAND CREDIT MANAGEMENT, INC.
a foreign for-profit corporation,

  Defendants.

_____/

## VERIFIED COMPLAINT

  **COME NOW**, Plaintiffs, CHRIS ANZALONE (hereinafter, "Anzalone") and SARAH BREUER (hereinafter, "Breuer") (hereinafter collectively, "Plaintiffs"), by and through their undersigned counsel, and sue Defendants, BERMUDA ESTATES, LLC (hereinafter, "Bermuda"), PROFESSIONAL DEBT MEDIATION, INC. (hereinafter, "PDM"), and MIDLAND CREDIT MANAGEMENT, INC. (hereinafter, "MCM"), (hereinafter collectively, "Defendants").  In support thereof, Plaintiffs state:

## INTRODUCTION AND PRELIMINARY STATEMENT

  This is an action for damages brought by individual consumers for Defendants' violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), 15 United States Code, Section 1692a, *et seq*. (hereinafter, "FDCPA"), the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA"), and for declaratory judgment and injunctive relief in equity.

## JURISDICTION AND VENUE

1.       Jurisdiction of this Court arises under 15 United States Code, Section 1692k(d), 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337.  Supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United State Code, Section 1367, and declaratory relief is available pursuant to 28 United States Code, Sections 2201 and 2202.

2.       Venue in this District is proper because Defendants transact business in this District and the conduct complained of occurred in this District.

3.       At all material times herein, the conduct of Defendants, complained of below, occurred in Sarasota County, Florida.

4.       At all material times herein, Plaintiffs are each individuals residing in Sarasota County, Florida.

5.       Defendant Bermuda is a limited liability company existing under the laws of the State of Florida, that, itself and through its subsidiaries, regularly extends residential leases to consumers in Sarasota County, Florida.

6.       Defendant PDM is a for-profit corporation existing under the laws of the State of Florida, that, itself and through its subsidiaries, regularly collects consumer debts due or allegedly due to another from consumers in Sarasota County, Florida.

7.       Defendant MCM is a for-profit corporation existing under the laws of the State of Kansas, that, itself and through its subsidiaries, regularly collects consumer debts due or allegedly due to another from consumers in Sarasota County, Florida.

## GENERAL ALLEGATIONS

8.       At all material times herein, Defendant Bermuda is a "creditor" as defined by Florida Statutes, Section 559.55(3).

9.      At all material times herein, Defendants PDM and MCM are each a "debt collector" as defined by 15 United States Code, Section 1692a(6) and Florida Statutes, Section 559.55(6).

10.     Defendants PDM and MCM use interstate mail while engaging in a business the principal purpose of which is the collection of debts allegedly due another.

11.     Defendants PDM and MCM are entities who regularly collect or attempt to, directly or indirectly, collect debts owed or due, or asserted to be owed or due, another.

12.     At all material times herein, Defendants attempt to collect a debt, specifically an alleged balance due for charges and fees associated with a lease agreement for the rental of real property located at 4201 Taggart Cay South, Sarasota, Florida 34233, referenced by Defendant Bermuda's account number ending in -2034 and also referenced by Defendant PDM's account number ending in -3292 and/or -3291 (hereinafter, "Debt").

13.     At all material times herein, the Debt was a consumer debt, an obligation resulting from a transaction for goods or services and was incurred primarily for personal, household, or family use.

14.     At all material times herein, Plaintiffs are each a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(3), respectively.

15.     At all material times herein, the Defendants are each a "person" subject to Florida Statutes, Section 559.72.  *See* Florida Statutes, Section 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

16.     At all material times herein, Defendants' conduct, with regard to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(5) and 15 United States Code, Section 1692a(2).

17.     At all material times herein, Defendants acted themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

18.     All necessary conditions precedent to the filing of this action occurred or have been waived by Defendants.

## FACTUAL ALLEGATIONS

19.     Defendants' telephone calls, as more specifically alleged below, were made to Plaintiff's Cellular Telephone number 941.302.1420 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

20.     Plaintiff Anzalone is the owner, regular user, and possessor of a Cellular Telephone with the assigned number 941.302.1420.

21.     At no time herein did Defendants possess Plaintiff Anzalone's prior express consent to call his Cellular Telephone using an ATDS, a PTDS, or an APV.

22.     Further, if Defendants contend they had such consent, such consent was revoked by operation of law the moment Plaintiffs' dispute letter was received by Defendants, as Defendants failed to ever validate the Debt prior to its collection attempts.

23.     On or about August 25, 2010, Plaintiffs entered into a lease agreement with Defendant Bermuda for the rental of real property located at 4201 Taggart Cay South, Sarasota, Florida 34233 (hereinafter, "Lease").

4

24.     The Lease expired on October 31, 3012 and required that notice of non-renewal be given by July 30, 2012.

25.     On or about July 23, 2012, Plaintiffs physically delivered a written notice of non-renewal (hereinafter, "Notice"), by placing said Notice in Defendant Bermuda's mailbox, which was located at the club house of the Bermuda Estates apartment complex.

26.     On or about October 31, 2012, pursuant to the expiration of the Lease, Plaintiffs shut off all utilities and vacated the property located at 4201 Taggart Cay South, Sarasota, Florida 34233.

27.     On or about November 6, 2012, Defendant Bermuda printed and prepared a statement of deposit which alleged that Plaintiffs owed it $2,044.33 with regard the Lease. Please see attached a true and correct copy of said statement of deposit labeled as Exhibit "A."

28.     In the immediately-aforementioned statement of deposit, despite the Lease expiring on October 31, 2013 and Plaintiffs vacating the premises and shutting of all utilities on October 31, 2012, Defendant Bermuda further alleged that Plaintiffs vacated the property on November 6, 2012, and thus owed additional fees for rent, utilities, and other services for the additional time purportedly spent in the apartment.

29.     On or before December 6, 2012, Defendant Bermuda turned the alleged Debt over to Defendant PDM for collection from Plaintiffs.

30.     From December 6, 2012 to December 20, 2012, Defendant PDM, on Defendant Bermuda's behalf—and with its consent, knowledge, and approval—called Plaintiff Anzalone's Cellular Telephone using an ATDS, a PTDS, or an APV.

31.     Defendant PDM, on Defendant Bermuda's behalf—and with its consent, knowledge, and approval—called Plaintiff Anzalone's Cellular Telephone approximately two (2)

to four (4) times per day during the time period enumerated above.

32.     During a December 6, 2012 call, and during multiple subsequent answered calls, Defendant PDM failed to identify itself, failed to identify the original creditor (i.e., Defendant Bermuda), and failed to disclose that Defendant PDM was attempting to collect a Debt from Plaintiffs and that any information obtained will be used for that purpose.

33.     On or about December 12, 2012, Defendant PDM sent Plaintiff Breuer a collection letter in an attempt to collect the Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "B."

34.     On or about December 20, 2012, Plaintiffs sent Defendant PDM a formal certified letter disputing the validity of the Debt, made Defendant PDM aware that Plaintiffs had knowledge of FDCPA and FCRA practices, and requested Defendant PDM forward the letter to the original creditor (hereinafter, "Dispute Letter").  Please see attached a true and correct copy of said Dispute Letter labeled as Exhibit "C1-C2."

35.     In the immediately-aforementioned Dispute Letter, Plaintiffs also requested that Defendant PDM provide Plaintiffs with the following information:

> (t)he amount of the debt; the name of the creditor to whom the debt is owed; provide a verification or copy of any judgment (if applicable); proof that you are licensed to collect debts in (insert name of your state)

*See* Exhibit "C2."

36.     To date, Defendants have failed to send Plaintiffs the requested verification and validation documents as requested in the Dispute Letter.

37.     From April 20, 2013 to April 30, 2014, despite receiving Plaintiffs' Dispute Letter and failing to provide the requested validation and verification documents, Defendant PDM, on Defendant Bermuda's behalf, and with its consent, knowledge, and approval, called Plaintiff

Anzalone's Cellular Telephone at least two (2) times a day using an ATDS, a PTDS, or an APV in an attempt to collect the alleged Debt.

38.     On or about October 8, 2013, despite receiving Plaintiffs' Dispute Letter and having knowledge of Plaintiffs' dispute of the Debt, Defendant PDM, on Defendant Bermuda's behalf, and with its consent, knowledge, and approval, sent Plaintiffs a collection letter in an attempt to collect the Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "D1-D4."

39.     The October 8, 2013 collection letter claims to have attached the requested validation and verification documents, however, Defendant PDM provided the incorrect documents, as the ones provided do not relate to Plaintiffs, the Debt, or Defendant Bermuda in any way. As such, Defendants failed to validate and verify the Debt as required by 15 United States Code, Section 1692g(a).  *See* Exhibit "D1-D4."

40.     On or about November 25, 2013, despite receiving Plaintiffs' Dispute Letter and failing to provide the requested validation and verification documents, Defendant PDM, on Defendant Bermuda's behalf—and with its consent, knowledge, and approval—sent Plaintiffs a collection letter in an attempt to collect the Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "E1-E4."

41.     The November 25, 2013 collection letter claims to have attached the requested validation and verification documents, however, Defendant PDM provided the incorrect documents, as the ones provided do not relate to Plaintiffs, the Debt, or Defendant Bermuda in any way. As such, Defendants failed to validate and verify the Debt as required by 15 United States Code, Section 1692g(a).  *See* Exhibit "E1-E4."

42.     PDM was hired by Bermuda to collect the Debt.

43.     The collection letter was drafted, approved by, and sent on Bermuda's behalf.

44.     The debt collection calls were placed with Bermuda's consent, knowledge, and approval, and on Bermuda's behalf.

45.     Bermuda gave PDM authority to draft the collection letter and send it to Plaintiff, as well as continue to place debt collection calls, despite possessing knowledge that the lease had expired and Plaintiffs' dispute of the alleged Debt.

46.     PDM drafted and sent the collection letter and placed collection calls in an attempt to collect the Debt from Plaintiffs.   PDM did so with Bermuda's knowledge and approval.

47.     Additionally, on or before October 19, 2014, Defendant Bermuda turned the alleged Debt over to Defendant MCM for collection from Plaintiffs.

48.     Defendant Bermuda advised Defendant MCM of Plaintiffs' Dispute Letter when Defendant Bermuda turned the Debt over to Defendant MCM for collection from Plaintiffs.

49.     On or about October 19, 2014 at approximately 11:27 a.m. EST, despite receiving notice of Plaintiffs' Dispute Letter and failing to provide the requested validation and verification documents, Defendant MCM, on Defendant Bermuda's behalf—and with its consent, knowledge, and approval, called Plaintiff Anzalone's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the alleged Debt.

50.     The immediately-aforementioned call was placed from telephone number 866.927.7380 and was made in an attempt to collect the alleged Debt.

51.     On or about October 20, 2014 at approximately 11:38 a.m. EST, despite receiving notice of Plaintiffs' Dispute Letter and failing to provide the requested validation and verification documents, Defendant MCM, on Defendant Bermuda's behalf—and with its

consent, knowledge, and approval, called Plaintiff Anzalone's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the alleged Debt.

52.     The immediately-aforementioned call was placed from telephone number 866.927.7380 and was made in an attempt to collect the alleged Debt.

53.     On or about March 26, 2014, Plaintiffs retained Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter, "Undersigned Counsel") for the purpose of pursuing this matter against Defendants, and Plaintiffs are obligated to pay their attorneys a reasonable fee for their services.

54.     At all times herein, it would have been possible for Defendants to avoid violating the terms of the TCPA.

55.     Plaintiffs have not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the continued barrage of Debt collection calls, to record the specifics on each and every call Defendants made to Plaintiffs. Plaintiffs assert, however, that the above-referenced calls are but a sub-set of the calls made in violation of the FCCPA, the FDCPA, and the TCPA.  Further, Defendants are in the best position to determine and ascertain the number and methodology of calls made to Plaintiffs.

56.     As a direct result of Defendants' actions, Plaintiffs have suffered severe stress, anxiety, inconvenience, frustration, annoyance, fear, confusion and loss of sleep, the reasonable belief that Plaintiffs' dispute of the Debt was wholly ineffective, and that the frequent, repeated debt collection attempts would simply have to be endured.

57.     Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, plus actual damages, and an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against Defendants.

58.     United States Code, Title 15, Section 1692k provides for the award of up to

$1,000.00 statutory damages, plus actual damages, and an award of attorney's fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against Defendants PDM and/or MCM.

59.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff Anzalone's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

60.     Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff Anzalone's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

61.     As of the date of this Complaint, Defendants have not initiated a law suit in an effort to collect the Debt.  Likewise, no final judgment regarding the Debt has been obtained by, or transferred to, Defendants.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiffs re-allege paragraphs one (1) through sixty-one (61) as if fully restated herein and further state as follows:

62.     Defendants are subject to, and have violated provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiffs through means which can reasonably be expected to abuse or harass Plaintiffs.

63.     On or about December 27, 2012, Defendant PDM received Plaintiffs' Dispute Letter which disputed the validity of the Debt and requested that further collection attempts cease

unless and until Defendants validated the Debt pursuant to 15 United States Code, Section 1692g (a)(1)-(5).

64.    Despite Plaintiffs' Dispute Letter and Defendants' failure, to date, to validate the Debt, Defendants continued to contact Plaintiffs in an attempt to collect the Debt. *See* Exhibits "D1-D4" and "E1-E4."

65.    From April 20, 2013 to April 30, 2014, Defendant PDM, on Defendant Bermuda's behalf—and with its consent, knowledge, and approval—called Plaintiff Anzalone approximately twice per day totaling at least seven-hundred-fifty (750) individual telephone calls.

66.    Defendant MCM received notice of Plaintiffs' dispute of the Debt from Defendant Bermuda.

67.    Despite Plaintiffs' Dispute Letter and Defendants' failure, to date, to validate the Debt, Defendant MCM, on Defendant Bermuda's behalf—and with its consent, knowledge, and approval—called Plaintiff Anzalone's Cellular Telephone *at least* two (2) times.

68.    Defendants disregard of Plaintiffs' dispute of the Debt, and continued telephone calls and collection letters were intended to make Plaintiffs believe their dispute was ineffective and that the continued collection attempts would continue until Plaintiffs satisfied the Debt.

69.    Further, Defendants' repeated and persistent actions were taken in an attempt to annoy, harass, and abuse Plaintiffs into paying the Debt despite Defendants' failure to validate the Debt.

70.    Defendants' willful and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

71.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**

Plaintiffs re-allege paragraphs one (1) through sixty-one (61) as if fully restated herein and further state as follows:

72.     Defendants are subject to, and have violated provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Debt with knowledge that the Debt is not legitimate or asserting the existence of the legal right with the knowledge that the right does not exist.

73.     On or before July 23, 2012, Plaintiffs entered into a Lease with Defendant Bermuda for the rental of real property located within the Bermuda Estates apartment complex.

74.     As part of the Lease, Defendant Bermuda required Plaintiffs give notice of non-renewal within sixty (60) days of vacating the premises.

75.     Further, the Lease's natural expiration date was October 31, 2012.

76.     On or about July 23, 2012, Plaintiffs provided Defendant Bermuda with Notice by placing the written Notice in Defendant Bermuda's mailbox located within the Bermuda Estates apartment complex.

77.     Plaintiffs vacated the property and shut off all utilities on October 31, 2012.

78.     Despite Plaintiffs' Compliance with the lease non-renewal policy, Defendants are attempting to collect $1,900.00 from Plaintiffs for allegedly failing to provide a sixty (60) day notice of non-renewal.

79.     The Debt is not legitimate because Plaintiffs did, in fact, provide sufficient and timely Notice to Defendant Bermuda within the mandated sixty (60) days requirement in the Lease.

80.     Further, Plaintiffs' disputed the Debt directly with Defendant PDM and requested that a copy of the Dispute Letter be sent to the original creditor Defendant PDM was acting on behalf of.  Despite Defendant PDM's receipt of said Dispute Letter and failing, to date, to satisfy the requirements of 15 United States Code, Section 1692g(a), Defendants continue to attempt to collect the Debt.

81.     By continuing to collect without ever validating the Debt, Defendants have asserted the legal right to collect despite the restrictions of 1692g(a).  Defendants knew they did not have such a right.

82.     If Defendants contend they did not have such knowledge of 15 United States Code, Section 1692g(a), Plaintiffs put Defendants on notice of said section within the Dispute Letter.

83.     A such, Defendants have violated 15 United States Code, Section 559.77(9) by asserting the legal right to collect the Debt despite the knowledge of the restrictions of 1692g(a) and failing to comply with such restrictions.

84.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d**

Plaintiff Anzalone re-alleges paragraphs one (1) through sixty-one (61) as if fully restated herein and further states as follows:

85.     Defendants PDM and MCM are subject to, and have each violated the provisions of 15 United States Code, Section 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the Debt.

86.     On or about December 27, 2012, Defendant PDM received Plaintiffs' Dispute Letter which disputed the validity of the Debt and requested that further collection attempts cease unless and until Defendant PDM validated the Debt pursuant to 15 United States Code, Section 1692g (a)(1)-(5).

87.     Despite Plaintiffs' Dispute Letter and Defendants' failure, to date, to validate the Debt, Defendants PDM and MCM continued to contact Plaintiffs in an attempt to collect the Debt. *See* Exhibits "D1-D4" and "E1-E4."

88.     From April 20, 2013 to April 30, 2014, Defendant PDM called Plaintiff Anzalone approximately twice per day totaling at least seven-hundred-fifty (750) individual telephone calls.

89.     From November 19, 2014 to November 20, 2014, Defendant MCM called Plaintiff Anzalone twice (2).

90.     Defendants PDM's and MCM's disregard of Plaintiffs' dispute of the Debt, and continued telephone calls and collection letters were intended to make Plaintiffs believe their dispute was ineffective and that the continued collection attempts would continue until Plaintiffs satisfied the Debt.

91.     Further, Defendants PDM's and MCM's repeated and persistent actions were taken in an attempt to annoy, harass, and abuse Plaintiffs into paying the Debt despite Defendants failure to validate the Debt.

92.     As a direct and proximate result of Defendants PDM's and MCM's actions,

14

Plaintiff Anzalone has sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE SECTION 1692d(5)**

Plaintiff Anzalone re-alleges paragraphs one (1) through sixty-one (61) as if fully restated herein and further states as follows:

93.     Defendant PDM is subject to, and has violated the provisions of, 15 United States Code, Section 1692d(5) by causing a telephone to ring or engaging Plaintiff in telephone conversation repeatedly with the intent to annoy, harass or abuse any person at the called number.

94.     On or about December 27, 2012, Defendant PDM received Plaintiffs' Dispute Letter which disputed the validity of the Debt and requested that further collection attempts cease unless and until Defendants validate the Debt.

95.     Despite Plaintiffs' Dispute Letter and Defendants' failure, to date, to validate the Debt, Defendant PDM continued to both call and contact Plaintiff Anzalone in an attempt to collect the Debt.

96.     From April 20, 2013 to April 30, 2014, Defendant PDM, on Defendant Bermuda's behalf, called Plaintiff Anzalone approximately two (2) times per day totaling at least seven-hundred-fifty (750) individual calls.

97.     As Defendant PDM could not attempt to collect the Debt until the Debt was validated pursuant to 15 United States Code, Section 1692g(a), Defendant PDM's barrage of collection calls to Plaintiff Anzalone's Cellular Telephone were made with no other intention but to annoy, harass, and abuse Plaintiff Anzalone until the Debt was paid.

98.     As a direct and proximate result of Defendant PDM's actions, Plaintiff Anzalone

has sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FIVE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d(6)**

Plaintiff Anzalone re-alleges paragraphs one (1) through sixty-one (61) as if fully restated herein and further states as follows:

99.    Defendant PDM is subject to, and has violated the provisions of, 15 United States Code, Section 1692d(6) by consistently contacting Plaintiff Anzalone without meaningful, truthful disclosure of its identity.

100.    From December 6, 2012 to December 20, 2012, Defendant PDM called Plaintiff Anzalone at least three (3) times per day totaling approximately forty-two (42) times in an attempt to collect the Debt.

101.    From April 20, 2013 to April 30, 2014, Defendant PDM called Plaintiff Anzalone at least two (2) times per day totaling approximately seven-hundred-fifty (750) times in an attempt to collect the Debt.

102.    During a number of the above-mentioned telephone calls, Plaintiffs answered the calls and spoke to Defendant PDM's representatives.  During these calls, Defendant PDM failed to disclose its identity and/or the identity of the name of the creditor to whom the Debt was owed to.

103.    As such, Defendant PDM violated 15 United States Code, Section 1692d(6) by consistently and continuously calling Plaintiff Anzalone without meaningful and truthful disclosure of its identity.

104.    As a direct and proximate result of Defendant PDM's actions, Plaintiff Anzalone has sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT SIX:
## FAIR DEBT COLLECTION PRACTICES ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1692f(1)

Plaintiffs re-allege paragraphs one (1) through sixty-one (61) as if fully restated herein and further state as follows:

105.     Defendants PDM and MCM are subject to, and have violated the provisions of, 15 United States Code, Section 1692f(1) by attempting to collect an amount (including interest, fees, charges, or expenses incidental to the principle obligation) not expressly authorized by the agreement creating the Debt or otherwise permitted by law.

106.     On or before July 23, 2012, Plaintiffs entered into a Lease with Defendant Bermuda for the rental of real property located within the Bermuda Estates apartment complex.

107.     As part of the Lease, Defendant Bermuda required Plaintiffs to give notice of non-renewal within sixty (60) days of vacating the premises.

108.     Further, the Lease's expiration date was October 31, 2012.

109.     On or about July 23, 2012, Plaintiffs provided Defendant Bermuda with Notice by placing the written Notice in Defendant Bermuda's mailbox located within the Bermuda Estates apartment complex.

110.     Plaintiffs vacated the property and shut off all utilities on October 31, 2012.

111.     Despite Plaintiffs' written Notice, Defendants PDM and MCM, as alleged in all of the telephone calls above, are attempting to collect $2,044.33 from Plaintiffs for failing to provide a sixty (60) day notice of non-renewal.

112.    Moreover, despite Defendants having failed to validate the Debt since Plaintiffs' Dispute Letter, effectively prohibiting Defendants from attempting to collect the Debt[1], Defendants PDM and MCM each attempted to collect the Debt from Plaintiffs.

113.    As a direct and proximate result of Defendants PDM's and MCM's actions, Plaintiffs have sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT SEVEN:**
**TELEPHONE CONSUMER PROTECTION ACT- NEGLIGENT**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiffs re-allege paragraphs one (1) through sixty-one (61) as if fully restated herein and further state as follows:

114.    Defendants are subject to, and have violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to call a telephone number assigned to a Cellular Telephone service without Plaintiff Anzalone's prior express consent.

115.    At no time did Defendants have Plaintiff Anzalone's prior express consent to call Plaintiff Anzalone on his Cellular Telephone.

116.    Further, if Defendants contend they had such consent, such consent was revoked the moment Plaintiffs sent the Dispute Letter to Defendant PDM.

117.    Despite lacking Plaintiff Anzalone's prior express consent, Defendant PDM, on behalf of Defendant Bermuda—and with its consent, knowledge, and approval—called Plaintiff Anzalone's Cellular Telephone at least seven-hundred-fifty (750) times in an attempt to collect the alleged Debt using an ATDS, a PTDS, or an APV.

---

[1] See 15 United States Code, Section 1692g(b), "If the consumer notifies the debt collector in writing…that the debt, or any portion thereof, is disputed…the debt collector shall cease collection of the debt…until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."

118.     Despite lacking Plaintiff Anzalone's prior express consent, Defendant MCM, on behalf of Defendant Bermuda—and with its consent, knowledge, and approval—called Plaintiff Anzalone's Cellular Telephone at least two (2) times in an attempt to collect the alleged Debt using an ATDS, a PTDS, or an APV.

119.     As the TCPA provides for "on behalf of" liability, any such violative calls placed by Defendants PDM or MCM—but on behalf of Defendant Bermuda—subject Defendant Bermuda to liability as if Defendant Bermuda placed the calls.

120.     The phone calls made by Defendants complained of herein are the result of a repeated willful and knowing violation of the TCPA.

121.     As a direct and proximate result of Defendants' conduct, Plaintiff Anzalone has suffered:

     a.     The periodic loss of his cellular telephone service;

     b.     Lost material costs associated with the use of peak time cellular telephone minutes allotted under his cellular phone service contract.

     c.     The expenditure of costs and attorney's fees associated with the prosecution of this matter, along with other damages which have been lost;

     d.     Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA; and

     e.     Statutory damages.

**COUNT EIGHT:**
**TELEPHONE CONSUMER PROTECTION ACT-**
<u>**WILLFUL VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**</u>

Plaintiff Anzalone re-alleges paragraphs one (1) through sixty-one (61) and count seven as if fully restated herein and further states as follows:

122.    The conduct of Defendants, complained of herein, is the result of a repeated willful and knowing violation of the TCPA.

123.    More specifically, as prior express never existed prior to Defendants' placement of calls to Plaintiff Anzalone's Cellular Telephone and Defendants receiving Plaintiffs' dispute letter, Defendants' calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

124.    Defendants are fully aware of the TCPA and its restrictions and, as such, Defendants' calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

125.    As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff Anzalone is entitled to an award of treble statutory damages, up to $1,500.00, for each and every violation, as alleged above, pursuant to 47 United States Code, Section 227(b)(3)(B) and 47 United States Code, Section (b)(3)(C).

126.    Plaintiff Anzalone is also entitled to and seeks injunctive relief enjoining Defendants from further violations of the TCPA.

## COUNT NINE:
## <u>VICARIOUS LIABILITY</u>

Plaintiffs re-allege paragraphs one (1) through sixty-one (61) as if fully restated herein and further state as follows:

127.    Defendants PDM and MCM were agents of Defendant, principal Bermuda, and acted within the scope of its agency while collecting the Debt, as referenced above.

128.    Defendant Bermuda, was aware, or should have been aware, that its agents, Defendants PDM and MCM, were unlawfully attempting to collect the Debt by sending, directly to Plaintiff, the collection letters, and placing debt collection calls using an ATDS, PTDS, or APV without prior express consent, when both Bermuda and PDM possessed knowledge that Plaintiffs disputed the alleged Debt.

129.    Defendant Bermuda owes a duty to the Plaintiffs to collect the Debt from Plaintiffs in a lawful manner.

130.    Defendant Bermuda breached its duty by failing to take further action to stop its agents PDM and MCM from collecting the Debt in violation of the FCCPA, FDCPA, and TCPA, including but not limited to, continuing collection communications with the Plaintiffs despite knowledge that Plaintiffs' had given effective Notice, despite knowledge of Plaintiffs' dispute of the alleged Debt and request for validation, and despite lacking prior express consent to place auto-dialed calls to Plaintiffs' cellular telephone.

131.    Bermuda's breach of duty was the cause of injury or damage to Plaintiffs.

132.    Plaintiffs suffered damages as a result of Bermuda's breach of duty.

## COUNT TEN:
## DECLARATORY AND INUNCTIVE RELIEF

Plaintiffs re-allege paragraphs one (1) through sixty-one (61) as if fully restated herein and further state as follows:

131.    Unless the Defendants are immediately enjoined from continuing their collection calls and other collection efforts against Plaintiffs with regard to the Debt, Plaintiffs will suffer irreparable injury.

132.    Plaintiffs have a clear legal right to the protection of the FCCPA and the TCPA.

133.    Given Defendants' conduct and their apparent intention and ability to continue to collect the Debt directly from Plaintiffs in violation of said debt collection laws, Plaintiffs have no adequate remedy at law.  Plaintiffs need and are entitled to injunctive relief.

134.    The requested injunction is reasonably necessary to protect the legal rights of Plaintiffs and will have no adverse effect on the public welfare.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of the Defendants' conduct, Plaintiffs respectfully request against Defendants entry of:

a.  Plaintiffs request a judgment against Defendants declaring that Defendants violated the FCCPA and the TCPA;

b.  Plaintiffs request a judgment against both Defendants for maximum statutory damages under the FCCPA;

c.  Plaintiffs request a judgment against Defendants PDM and MCM for maximum statutory damages under the FDCPA for the violations committed by Defendants PDM and MCM;

Case 8:14-cv-02891-JDW-AEP   Document 1   Filed 11/19/14   Page 23 of 26 PageID 23

d.  Plaintiff Anzalone requests a judgment against each Defendant for statutory damages in the amount of $500.00 for each of Defendants' telephone calls that violated the TCPA;

e.  Plaintiff Anzalone requests a judgment against each Defendant for treble damages in the amount of $1,500.00 for each telephone call that violated the TCPA for which Defendants acted knowingly and/or willfully;

f.  Plaintiff Anzalone requests a judgment against each Defendant for actual damages suffered by Plaintiff Anzalone in an amount to be determined at trial;

g.  Plaintiffs request a judgment against Defendants enjoining Defendants from further engaging in the conduct that violates the FCCPA and the TCPA;

h.  Plaintiffs request an award of attorneys' fees and costs; and

i.  Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiffs hereby give notice to Defendants and demand that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this potential litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Greg H. Lercher*
**Ian R. Leavengood, Esq., FBN 0010167**
**Aaron M. Swift, Esq., FBN 0093088**
**G. Tyler Bannon, Esq., FBN 0105718**
**Greg H. Lercher, Esq., FBN 0106991**
Northeast Professional Center
3900 First Street North, Suite 100

23

St. Petersburg, FL 33703
Phone:  (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
aswift@leavenlaw.com
tbannon@leavenlaw.com
glercher@leavenlaw.com
*Attorneys for Plaintiffs*

Jul 30 14 04:16p          chris                              19413289721                    p.3

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA                    )
                                    )
COUNTY OF _Sarasota_ )

Plaintiff Sarah Breuer, having first been duly sworn and upon oath, deposes and says as

follows:

1.  I am a Plaintiff in this civil proceeding.

2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of

    the facts contained in it are true, to the best of my knowledge, information and belief formed

    after reasonable inquiry.

3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by

    a good faith argument for the extension, modification, or reversal of existing law.

4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass

    any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in

    the cost of litigation to any Defendant(s), named in the Complaint.

5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6.  Each and every exhibit which has been attached to this Complaint, if any, is a true and correct

    copy of the original.

7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not

    altered, changed, modified, or fabricated any exhibits, except that some of the attached

    exhibits, if any, may contain some of my own handwritten notations.

Subscribed and sworn to before me                    Sarah Breuer
this 07 day of 30 , 2014.
                                                     Notary Public

My Commission Expires:                               Proof of I.D.: _Florida Driver's License_





OLYMPIA BAYLOU
Notary Public - State of Florida
My Comm. Expires Mar 30, 2017
Commission # EE 884898
Bonded Through National Notary Assn.

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA            )
                            )
COUNTY OF Sarasota          )

Plaintiff Chris Anzalone, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

Subscribed and sworn to before me                    Chris Anzalone
this 7 day of 30 , 2014.

                                                     Notary Public

My Commission Expires:                               Proof of I.D.: Florida Drivers License



OLYMPIA BAYLOU
Notary Public - State of Florida
My Comm. Expires Mar 30, 2017
Commission # EE 884898
Bonded Through National Notary Assn.